# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| Argustoli H.C., LLC, a Nevada limited liability company; Redact, LLC, a Texas limited liability company and as General Partner of Aldis Manufacturing, Ltd., a Texas limited partnership and as General Partner for Aldis Sales, Ltd., a Texas limited partnership,<br><br>Plaintiffs<br><br>v.<br><br>AgSaver, LLC, a Mississippi Limited Liability Company; Clarke Pugh, an individual; DOES I through X, inclusive; and ROE CORPORATIONS I through X, inclusive,<br><br>Defendants | 2:16-cv-02431-JAD-CWH<br><br>**Order Denying Motion for Temporary Restraining Order**<br><br>[ECF No. 7] |

Plaintiff Argustoli H.C., LLC makes herbicides. It wanted to use defendant AgSaver's, LLC's proprietary chemical, Glyphosate 41, in its products, so it purchased a license from AgSaver. The parties' license agreement says that Argustoli can use AgSaver's Glyphosate in its products, and in return, Argustoli pays AgSaver a royalty on each herbicide product that Argustoli sells its customers. AgSaver recently cancelled Argustoli's license agreement, prompting Argustoli to request this temporary restraining order. Argustoli argues that it is likely to succeed on a breach-of-contract claim against AgSaver, that it will be irreparably harmed if it cannot continue to use Glyphosate, and that I should thus grant a TRO stopping AgSaver from interfering with Argusoli's supply of the chemical.

TROs are only for emergencies because "our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard . . . [has been given to] both sides of a dispute."[1] This is why Argustoli must meet a "high hurdle" to show both that it is likely to succeed on the merits of its contract claims, and that it will be irreparably harmed if it is not

---

[1] *Granny Goose Foods, Inc. v. Brotherhood of Teamsters,* 415 U.S. 423, 439 (1974).

given an injunction.[2]  Argustoli has shown neither.

Argustoli appears unlikely to succeed on the merits of its breach of contract claims.  Its main argument on the merits is that AgSaver could not cancel the parties' license agreement because it failed to give Argustoli notice of the termination before June 30, 2016.  But the only plausible reading of the agreement is that AgSaver had until September 30, 2016, to give Argustoli notice (a deadline it complied with).  Argustoli's other argument on the merits is that even if it validly terminated the agreement, AgSaver needed to give Argustoli more time to finish using the Glysophate.  The parties' agreement required that AgSaver give Argustoli a "reasonable" winding-up period to finish using the chemical—and AgSaver afforded three months.  It is hard to imagine that this was not a reasonable period.

But even if it were not, Argustoli has not explained how this relatively minor breach warrants a TRO.  Once this case is distilled down to Argustoli's only plausible claim—that AgSaver properly terminated the agreement but that AgSaver did not give Argustoli a "reasonable" period to finish using the Glysophate—Argustoli's arguments that it will be irreparably harmed become untenable.  Argustoli has not articulated why it needed more than three months to finish using the Glysophate, much less how it will be irreparably harmed if it isn't given more time to use the chemical now.  And Argustoli fails to explain why AgSaver's alleged breach in not giving Argustoli longer to use the Glysophate cannot be remedied by damages.  At best, Argustoli has shown that it might lose the money it invested in its current batch of herbicide.  But I see no reason why AgSaver could not make Argustoli whole by paying Argustoli for the value of this product.[3]

**Background**

The parties entered into their licensing agreement on October 1, 2013.[4]  AgSaver allows Argustoli to use Glysophate and, in return, Argustoli pays AgSaver a royalty on each product that

---

[2] *Stanchart Sec. Int'l, Inc. v. Galvadon*, 2012 WL 5286952, at *1 (S.D. Cal. Oct. 24, 2012).

[3] I find these motions suitable for disposition without oral argument.  Nev. L.R. 78-1.

[4] ECF No. 7-1 at 2.

Argustoli sells.[5] Argustoli sources ingredients from various places around the world, including getting its Glysophate made in China.[6] Argustoli alleges that its manufacturing process takes 90 days from start to finish, and that it is currently in the process of making herbicides with Glysophate.[7]

The parties' licensing agreement states that it is in effect from October 1, 2013, "and shall terminate on September 30, 2016."[8] The agreement has a "term and termination" clause that says that the agreement will renew for an additional year (until September 30, 2017), but only "if notice of cancellation is not received within 90 days" of the contract's end date of September 30, 2016.[9] The termination clause also says that, when the contract is terminated, Argustoli "shall cease . . . use of" Glyphosate "within a reasonable time to be agreed upon" by the parties.[10]

On August 5, 2016, AgSaver sent a letter telling Argustoli (1) that AgSaver was terminating the agreement, and (2) that Argustoli had until November 3, 2016, to wrap up its use of Glysophate.[11] Argustoli alleges that it has herbicide in various stages of production and can't finish it by November 3, 2016.[12]

**Discussion**

Temporary restraining orders are governed by the preliminary-injunction factors: Argustoli bears the burden to show that (1) it is likely to succeed on its breach of contract claim; (2) it will likely be irreparably harmed if I do not give it preliminary relief; (3) the balance of equities tips in its

---

[5] *Id.* at 2–4.

[6] ECF No. 7 at 4–7.

[7] *Id.*

[8] ECF No. 7-1 at 7.

[9] *Id.* at 4.

[10] *Id.*

[11] *Id.* at 6–7.

[12] *Id.*

favor; and (4) an injunction is in the public interest.[1]  Additionally, Argustoli must meet the "high hurdle" of showing that "immediate relief is necessary."[2]  I have wide discretion to decide whether to grant a TRO.[3]

**A.     Likelihood of success on the merits**

Argustoli's primary claim is that AgSaver cannot cancel the parties' license agreement because it did not notify Argustoli of the termination soon enough.  Argustoli points to the license agreement's termination clause, which states that the agreement will extend to September 2017 "if notice of cancellation is not received within 90 days" of September 30, 2016.  Argustoli contends that this clause means that AgSaver was required to give notice 90 days *before* September 30, 2016—which is June 30, 2016—and that, by waiting until August 5, 2016, AgSaver waived its right to terminate.  Argustoli's argument is untenable.

The parties' agreement allowed AgSaver to terminate the agreement if it notified Argustoli "within 90 days of" September 30, 2016—in other words, the period for termination was inside the 90-day period before or after September 30th.  Argustoli has not provided me with any authority to suggest that "within 90 days" means "at least 90 days before"—and that is what its argument would require.  Nor has it provided any evidence or argument to suggest that this term is somehow ambiguous.  The text of the agreement thus required AgSaver to tell Argustoli that it was cancelling its license during the 90-day period immediately preceding or following September 30, 2016. AgSaver complied with this term by notifying Argustoli of the termination in the beginning of August.

Argustoli's other argument on the merits is also unlikely to succeed.  Argustoli contends that AgSaver breached by failing to negotiate with Argustoli to setup a reasonable winding-up period for Argustoli's use of the Glysophate.  The parties' agreement says that AgSaver must give Argustoli a

---

[1] *V'Guara Inc. v. Dec*, 925 F. Supp. 2d 1120, 1123 (D. Nev. 2013); *see also* FRCP 65(b); *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

[2] *Stanchart Sec. Int'l, Inc. v. Galvadon*, No. 12CV2522-LAB MDD, 2012 WL 5286952, at *1 (S.D. Cal. Oct. 24, 2012).

[3] *Sierra On-Line, Inc. v. Phoenix Software, Inc.,* 739 F.2d 1415, 1422 (9th Cir. 1984).

"reasonable" winding-up period, and that the parties should agree on this period. AgSaver gave Argustoli three months to finish using the Glysophate, which appears reasonable—particularly given that Argustoli itself says that it takes only 90 days to make its herbicide with Glysophate. That said, I cannot say, as a matter of law, that AgSaver gave Argustoli a "reasonable" winding-up period. So this claim is at least plausible, although it does not appear likely to succeed.

**B.    Irreparable harm**

Argustoli argues that, if AgSaver is allowed to interfere with Argustoli's supply of Glysophate, Argustoli's business will collapse because it won't be able to continue making and selling its herbicides in the future. But as I explained above, Argustoli has not shown that it will have any likelihood of success arguing that AgSaver could not terminate the license.

The only claim Argustoli has raised with any likelihood of success is that it should be given more "reasonable" time to wrap up using the Glysophate. But Argustoli has not provided any evidence or analysis to explain why this breach cannot be fully compensated by damages. Argustoli alleges that it currently has herbicide in production and cannot finish it all by the November termination date. But that does not explain how it will be irreparably harmed. If AgSaver is found to have breached by not giving Argustoli more time to finish its current batch of herbicides, presumably it can fully compensate Argustoli by paying for it.

Any argument that Argustoli needs an emergency TRO is also belied by the fact that it waited months to bring this TRO once it knew that AgSaver was cancelling its license. On August 5th, AgSaver notified Argustoli that its license was terminated in November. That Argustoli did not move for relief sooner belies the notion that it is in such dire straits.

**C.    The other TRO factors**

The other TRO factors are not especially helpful here. As to balance of the hardships, Argustoli makes conclusory arguments that it will be more harmed than AgSaver if I do not grant a TRO. Argustoli says it will lose money—and it may. But AgSaver will possibly be harmed if I don't allow it to cancel its license and control who gets to use its proprietary chemicals. And Argustoli concedes that this private contract action isn't particularly relevant to public policy.[1]

---

[1] ECF No. 7 at 13.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff Argustoli H.C., LLC's **Motion for Temporary Restraining Order [ECF 7] is DENIED.**

Dated this 28th day of October, 2016

_____
Jennifer A. Dorsey
United States District Judge